UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| The Humane Society of the United States<br>2100 L Street NW<br>Washington, DC 20037<br><br>Animal Protection Institute<br>P.O. Box 22505<br>Sacramento, CA 95822<br><br>Friends of Animals and Their Environment<br>("FATE")<br>2170 St. Clair Avenue<br>St. Paul, MN 55105<br><br>Help Our Wolves Live ("HOWL")<br>4600 Emerson Avenue South<br>Minneapolis, MN 55409<br><br>Indigenous Environmental Network<br>P.O. Box 485<br>Bemidji, MN 56619-0485<br><br>Klamath Forest Alliance<br>P.O. Box 21<br>Orleans, CA 95556<br><br>RESTORE: The North Woods<br>9 Union Street<br>Hallowell, ME 04347<br><br>        Plaintiffs,<br><br>vs.<br><br>Dirk Kempthorne, Secretary of the Interior<br>Department of the Interior<br>1849 C Street NW<br>Washington, DC 20240<br><br>United States Department of the Interior<br>1849 C Street NW<br>Washington, DC 20240 | Case No. _____<br><br><br><br>**COMPLAINT FOR DECLARATORY<br>AND INJUNCTIVE RELIEF** |

H. Dale Hall, Director
United States Fish and Wildlife Service
1849 C Street, NW
Washington, D.C. 20240

United States Fish and Wildlife Service,
1849 C Street, NW
Washington, D.C. 20240

Defendants.

Plaintiffs The Humane Society of the United States, Animal Protection Institute, Friends of Animals and Their Environment ("FATE"), Help Our Wolves Live ("HOWL"), Indigenous Environmental Network, Klamath Forest Alliance, and RESTORE: The North Woods, for their complaint against Defendants Dirk Kempthorne, Secretary of the Interior, the United States Department of the Interior, H. Dale Hall, Director of the United States Fish and Wildlife Service, and the United States Fish and Wildlife Service, state and allege:

## INTRODUCTION

1. By filing this complaint, Plaintiffs challenge the decision of the United States Fish and Wildlife Service and United States Department of Interior (collectively "FWS") to authorize the killing of endangered gray wolves (*Canis lupus*) under Section 10(a)(1)(A) of the Endangered Species Act ("ESA").

2. As a narrow exception to the ESA's otherwise sweeping prohibition against taking endangered species, Section 10(a)(1)(A) allows the FWS to issue take permits "for scientific purposes or to enhance the propagation or survival or the affected species." 16 U.S.C. § 1539(a)(1)(A). On April 24, 2006, the FWS issued a Section 10(a)(1)(A) permit to the Wisconsin Department of Natural Resources ("Wisconsin") authorizing the lethal taking

2

of depredating wolves in order to increase social tolerance for wolf recovery.

3. Expanding the scope of ESA Section 10(a)(1)(A) to authorize the killing of endangered wolves for social policy reasons fundamentally contravenes the plain language, structure and purpose of the ESA.

4. This is a civil action for declaratory and injunctive relief. Plaintiffs seek a declaration from this Court that the FWS violated the ESA, 16 U.S.C. §§ 1531-1544, and the Administrative Procedure Act, 5 U.S.C. §§ 553-559, 701-706 ("APA"), by authorizing Wisconsin to kill endangered wolves to increase public support for wolf recovery. Plaintiffs further seek an injunction preventing Wisconsin from any further killing of wolves under the unlawful permit.

## JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 16 U.S.C. § 1540(c) and 28 U.S.C. §§ 1331, 1361, and 2201, as this action presents cases and controversies under the Endangered Species Act, 16 U.S.C. §§ 1531-1544, and the Administrative Procedure Act, 5 U.S.C. §§ 553-559, 701-706.

6. Venue is proper in the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1391(e)(1) because this is a civil action against an agency or agencies of the United States and is filed in a judicial district in which the Defendants, as well as some of the Plaintiffs, reside.

7. Injunctive relief is authorized by Rule 65 of the Federal Rules of Civil Procedure. The requested relief is proper under 16 U.S.C. § 1540(g), 28 U.S.C. §§ 2201 and 2202, and 5 U.S.C. §§ 705 and 706.

## PARTIES

8.      Plaintiff The Humane Society of the United States ("HSUS") is a non-profit charitable organization incorporated in 1954. HSUS is the largest animal protection organization in the world, with over 9 million members and constituents, including in Wisconsin. HSUS's mission is to promote the humane treatment of animals and to foster respect, understanding and compassion for all creatures. HSUS regularly submits comments to government agencies concerning proposed actions that will affect animals. HSUS publishes a magazine and maintains a website for its members and the general public, and it regularly disseminates information concerning the treatment of wild animals, including information about government decisions that affect animals. HSUS has been an active advocate for wolf protection and recovery throughout its history. HSUS members study and observe gray wolves in the wild and have attended meetings of state and federal agencies and other interested parties concerning the wolf situation throughout the United States. HSUS members enjoy studying, photographing, and viewing all wildlife in its natural habitat, including wolves, and place a great importance on their ability to freely appreciate the wolves in the wild. These interests will be adversely affected and the Plaintiffs injured if the wolf population is reduced by the number of wolves allowed to be killed under the take permits.

9.      Plaintiff Animal Protection Institute ("API") was founded in 1968 and is a non-profit organization with more than 85,000 members and supporters that advocate for the protection of animals from cruelty and exploitation. API's animal protection work includes monitoring and studying the impacts of agency actions on animals, including wolves and other carnivores. API regularly submits comments to government agencies concerning

4

proposed actions that will affect animals. API publishes a magazine and maintains a website for its members and the general public, and it regularly disseminates information concerning the treatment of wild animals, including information about government decisions that affect animals. API's members enjoy wildlife viewing, specifically viewing wolves, as well as taking pictures and being able to freely appreciate wolves in the wild. API's members are harmed by FWS's issuance of a take permit to Wisconsin because it will result in the presence of fewer wolves in Wisconsin and the coterminous United States.

10. Plaintiff Help Our Wolves Live ("HOWL") is a non-profit charitable organization incorporated in 1971 in Minnesota. HOWL is an advocacy group whose purpose is to work for the protection and preservation of the gray wolf and other endangered species. HOWL's members enjoy observing and monitoring wolves in the wild. HOWL uses education and science to discourage misuse and cruelty to wild species caused by humans. HOWL's members are harmed by FWS's issuance of a take permit to Wisconsin because that permit will result in the presence of fewer wolves in Wisconsin and the coterminous United States.

11. Plaintiff Klamath Forest Alliance ("KFA") is a non-profit corporation headquartered in the small town of Orleans, California. KFA's mission includes promotion of sustainable ecosystems and sustainable communities in Northern California and Southern Oregon. KFA has approximately 300 members and supporters. KFA works to protect and restore populations of threatened and endangered species. KFA has been involved with gray wolf recovery issues for a number of years. KFA members have attended meetings of state and federal agencies and other interested parties concerning dispersal of the Idaho wolves into Eastern Oregon. KFA's members have studied and looked for the gray wolf in

5

preparation for the wolf's return to areas of Oregon and Northern California. KFA's members are harmed by FWS's issuance of a take permit to Wisconsin because the permit will result in the presence of fewer wolves in the coterminous United States.

12. Plaintiff RESTORE: The North Woods ("RESTORE") is a regional conservation organization dedicated to preserving and restoring wildlife and wilderness in the North Woods. Founded in 1992, RESTORE has approximately 1,500 members and operates offices in Maine and Massachusetts. More than a decade ago, RESTORE launched the first grassroots campaign to promote wolf recovery in the Northeast. Toward that end, the organization has been involved with public education, advocacy, regional planning, and coalition building. RESTORE's members participate in wolf research and tracking programs in the northeastern United States. RESTORE's members are harmed by FWS's issuance of a take permit to Wisconsin because that permit will result in the presence of fewer wolves in Wisconsin and the coterminous United States.

13. Plaintiff Friends of Animals and Their Environment ("FATE") is a Minnesota-based non-profit organization committed to the protection of animals and ecosystems on which they depend. FATE has approximately 200 members who regularly work on behalf of animals, and in particular wolves, through public education and political lobbying, and who enjoy monitoring and observing wolves in the wild. FATE's members are harmed by FWS's issuance of a scientific take permit to Wisconsin because the permit will result in the presence of fewer wolves in Wisconsin and the coterminous United States.

14. Plaintiff Indigenous Environmental Network ("IEN") was formed in 1991 and is an international network of approximately 150 affiliate organizations and community groups. IEN provides these affiliate organizations with information and technical support

6

regarding environmental problems faced by Indigenous communities. IEN's affiliates are comprised of Indigenous people for whom gray wolves play an important role in traditional religious and cultural beliefs. For some tribes, wolves are essential to the survival and success of many of their sacred ceremonies. Furthermore, IEN's member organizations have members who enjoy observing wolves in the wild. IEN's members are harmed by FWS's issuance of a scientific take permit to Wisconsin because the permit will result in the presence of fewer wolves in Wisconsin and the coterminous United States.

15. Plaintiffs have an interest in the enforcement and administration of the Endangered Species Act that extends beyond the generalized interest all members of the public have in the enforcement of the law. Plaintiffs are organizations dedicated to the protection and preservation of gray wolves in the United States. Plaintiffs and their members observe and monitor gray wolves in the wild for enjoyment, education, scientific, religious, and cultural reasons. Final administrative actions of the FWS and Department of Interior, taken in contravention of existing law, directly injure Plaintiffs and their members by authorizing the lethal take of gray wolves, which will diminish the number of wolves in Wisconsin and the coterminous United States.

16. Defendants Dirk Kempthorne, Secretary of the Interior, United States Department of the Interior, H. Dale Hall, Director of the FWS, and the United States Fish and Wildlife Service are charged with the administration of the Endangered Species Act. Defendants are responsible for ensuring the continued viability of species listed as endangered or threatened under the Endangered Species Act, and for ensuring that decisions made regarding endangered or threatened species comply with the laws of the United States, including the ESA and the APA. Defendants are sued in their official capacities.

## STATUTORY AND REGULATORY BACKGROUND

17.     When the ESA was enacted in 1973, Congress declared that developing and maintaining "conservation programs which meet national and international standards is a key . . . to better safeguarding, for the benefit of all citizens, the Nation's heritage in fish, wildlife, and plants." 16 U.S.C. § 1531(a)(5).  Indeed, the Supreme Court has recognized that, by enacting the ESA, Congress "intended endangered species to be afforded the highest priorities." Tennessee Valley Authority v. Hill, 437 U.S. 153, 174 (1978).

18.     The ESA mandates that "all Federal departments and agencies shall seek to conserve endangered species and threatened species and shall utilize their authorities in furtherance of the purposes of this chapter." 16 U.S.C. § 1531(c)(1).  The stated purpose of the ESA is "to provide a means whereby the ecosystems on which endangered and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531(b).

19.     Section 4 of the ESA, 16 U.S.C. § 1533, requires the Secretary of Interior ("Secretary") to establish a list species of wildlife or plants that are endangered or threatened with extinction.  16 U.S.C. § 1533(c)(1).  The Secretary's regulations with regard to listing, and the lists of the species themselves, are found at 50 C.F.R. Part 17.

20.     The gray wolf (*Canis lupus*) is listed as an endangered species in all states in the coterminous United States except for the State of Minnesota, where it is classified as threatened.

21.     The fundamental method by which the ESA protects endangered species is its aggressive prohibition on taking any endangered species within the United States. 16 U.S.C. § 1538.  Defined broadly, the term "take" means to "harass, harm, pursue, hunt, shoot,

8

wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1532(19).

22. As a narrow exception to the ESA's blanket prohibition on taking endangered species, Section 10(a)(1)(A) of the ESA allows the FWS to issue permits authorizing the taking of an endangered species "for scientific purposes or to enhance the propagation or survival of the affected species . . . ." 16 U.S.C. § 1539(a)(1)(A).

23. The APA, 5 U.S.C. §§ 553-559, 701-706, provides for judicial review of final agency action, such as the FWS's issuance of permits under Section 10(a)(1)(A) of the ESA. A reviewing court shall compel agency action unlawfully withheld or unreasonably delayed, 5 U.S.C. § 706(1), and hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, 5 U.S.C. § 706(2)(A). A reviewing court shall also set aside agency action, findings, and conclusions found to be without observance of procedure required by law. 5 U.S.C. § 706(2)(D).

## FACTS

24. On April 1, 2003, the FWS issued the Final Rule to Reclassify and Remove the Gray Wolf from the List of Endangered and Threatened Wildlife in Portions of the Conterminous United States. 68 Fed. Reg. 15,804 (April 1, 2003) ("Final Rule"). The Final Rule reduced the protection afforded the gray wolf by changing the status of the species from endangered to threatened.

25. By changing the status of the gray wolf to "threatened," the FWS could take advantage of Section 4(d) of the ESA, 16 U.S.C. § 1533(d), which allows the FWS to "issue such regulations as he deems necessary and advisable to provide for the conservation of the

9

species." 16 U.S.C. § 1533(d). Accordingly, in the Final Rule, the FWS used its authority under Section 4(d) to institute programs allowing state and tribal authorities, as well as private parties, to take depredating wolves by lethal and non-lethal means. 68 Fed. Reg. at 15,863-68.

26. On January 31, 2005, the Final Rule was enjoined and vacated by Defenders of Wildlife v. Norton, 354 F. Supp. 2d 1156 (D. Or. 2005).[1] When the Final Rule was vacated, wolves regained their "endangered" status in all states except Minnesota. Consequently, the FWS no longer had authority under Section 4(d) of the ESA to institute its lethal depredation control programs. This meant that states such as Wisconsin, where wolves were once again classified as "endangered," lost their authority to kill wolves in response to depredation complaints.

27. On February 11, 2005, Wisconsin submitted a permit application to the FWS under ESA Section 10(a)(1)(A), requesting authority to use lethal and non-lethal force to control depredating wolves in Wisconsin. On April 1, 2005, the FWS granted Wisconsin's request and issued a Section 10(a)(1)(A) permit authorizing Wisconsin to kill up to 34 depredating wolves during 2005.

28. Environmental organizations, including the Plaintiffs here, successfully challenged the permit issued to Wisconsin (as well as a similar permit issued to the Michigan Department of Natural Resources) on procedural grounds, as those permits had been granted without providing an opportunity for notice and comment, in violation of Section 10(c) of the ESA, 16 U.S.C. § 1539(c). At the September 13, 2005 preliminary injunction hearing, Judge

---

[1] The FWS filed a protective appeal of that decision, but then voluntarily dismissed the appeal in December 2005.

Ellen Segal Huvelle of the United States District Court for the District of Columbia granted a permanent injunction enjoining the further taking of wolves under the unlawfully issued permits.

29. After this Court vacated the permit issued to Wisconsin in 2005, Wisconsin resubmitted a Section 10(a)(1)(A) permit application on September 14, 2005. The permit application was published in the Federal Register, and the public comment period ended on October 14, 2005.

30. The FWS prepared a draft environmental assessment ("EA") in connection with the 2006 permit application. The draft EA was made available for public comment on March 2, 2006.

31. In April 2006, the FWS published the Final Environmental Assessment and the accompanying Decision and Finding of No Significant Impact.

32. On April 24, 2006, the FWS issued a Section 10(a)(1)(A) permit authorizing Wisconsin to implement a lethal depredation control program that includes killing endangered wolves ("Wisconsin Permit"). The FWS's rationale for the Wisconsin Permit is described in the Set of Findings.

33. The lethal depredation control program authorized by the Wisconsin Permit is nearly identical to the control program allowed under the Section 4(d) regulations that were enjoined by the United States District Court for the District of Oregon in Defenders of Wildlife v. Norton, 354 F. Supp. 2d 1156 (D. Or. 2005). Like the Section 4(d) rules, the Wisconsin Permit authorizes the use of both lethal and non-lethal methods for depredation control. See 68 Fed. Reg. at 15868 (the invalidated Section 4(d) regulations allowed "the full spectrum of depredation control actions, from nonlethal opportunistic harassment to

lethal control of depredating wolves"). In addition, conditions on takings that are set forth in Wisconsin Permit – such as verification of wolf depredation on lawfully present domestic animals, and the release of the young of the year captured before August 1 – are markedly similar, if not precisely identical, to the conditions that were outlined in the invalidated Section 4(d) depredation control program. See 68 Fed. Reg. at 15868.

34.     The Wisconsin Permit is also nearly identical to the Section 10(a)(1)(A) permit issued to Wisconsin in 2005, except that the Wisconsin Permit increases the number of depredating wolves that can be killed from 34 to 43.

35.     The FWS has issued a similar Section 10(a)(1)(A) permit to the Michigan Department of Natural Resources. In addition, the FWS has published notice in the Federal Register that the Idaho Department of Fish and Game has requested a permit under Section 10(a)(1)(A) to kill depredating wolves. See Endangered Species Permit Recovery Application, 71 Fed. Reg. 1550 (Jan. 10, 2006). The permit issued to Wisconsin is part of a national strategy for implementing lethal depredation control programs despite the decision in Defenders of Wildlife v. Norton, 354 F. Supp. 2d 1156 (D. Or. 2005). In other words, the FWS's issuance of Section 10(a)(1)(A) permit to Wisconsin is an attempt to implement the Section 4(d) wolf depredation abatement program that was invalidated along with the Final Rule.

36.     The FWS asserts that absent a government-sponsored program to kill depredating wolves, there will be "an increased possibility of public backlash," which may increase negative attitudes towards wolves and possibly increase the rate of illegal killing of wolves in Wisconsin. See Set of Findings at 2. The FWS relies on this possibility of decreased public support for wolf recovery to rationalize the killing of up to 10% of the

12

endangered wolf population in Wisconsin under the Wisconsin Permit.

37.     The FWS's issuance of Section 10(a)(1)(A) permits to authorize taking of endangered species for social policy reasons is an affront to the protections afforded under the ESA and impermissibly broadens the scope of an otherwise narrow take exception. Moreover, killing endangered wolves to increase social tolerance for wolf recovery is anathema to the plain language, structure, purposes and policy of the ESA.

38.     While the FWS contends that lethal depredation control is necessary to increase public tolerance for wolf recovery and prevent the illegal killing of wolves, the underlying factual premises of this social tolerance theory are unsupported. In particular, the FWS has not shown that the implementation of a lethal depredation control program in Wisconsin has or will increases social tolerance. Further, the FWS has failed to show that the implementation of a lethal control program would decrease illegal killing. In addition, the FWS has not shown that lethal control of depredating wolves actually decreases depredation rates.

39.     Because the Wisconsin Permit violates the ESA, Plaintiffs sent a sixty-day notice letter dated May 9, 2006, to the FWS requesting that the Wisconsin Permit be rescinded. That letter was sent pursuant to Section 11(g) of the ESA, 16 U.S.C. § 1540(g)(1).

## COUNT I

40.     The Plaintiffs restate and reallege the foregoing allegations as if fully stated herein.

41.     The FWS's issuance of a permit to Wisconsin pursuant to ESA Section 10(a)(1)(A), 16 U.S.C. § 1539(a)(1)(A), constitutes final agency action.

42. The FWS's issuance of the Section 10(a)(1)(A) permit to Wisconsin violates ESA Section 10, 16 U.S.C. § 1539, because:

(a) The lethal depredation control program authorized by the permit is outside of the scope of the narrow take exceptions allowed under Section 10(a)(1)(A);

(b) Authorizing the killing of endangered species for social policy reasons contravenes the plain language, structure, purposes and policy of the ESA;

(c) The FWS has failed to provide any scientifically based factual support to show that the lethal depredation control program will affirmatively "enhance the propagation or survival" of the gray wolf.

43. Because the takings authorized by the Wisconsin Permit contravene the mandates of the ESA, the FWS's decision to issue the Wisconsin Permit was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, in violation of the APA, 5 U.S.C. § 706(2)(A).

44. The FWS's actions threaten imminent and irreparable harm to the gray wolves in Wisconsin and to the Plaintiffs' interest in and enjoyment of gray wolves.

45. Plaintiffs have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for following relief:

46. A declaration that the issuing a Section 10(a)(1)(A) permit authorizing the killing of endangered wolves for depredation control purposes violates the ESA and the APA;

47. An order vacating the provisions of the Wisconsin Permit that allow lethal

14

taking of depredating wolves;

  48. An order enjoining Wisconsin from killing any wolves pursuant to the depredation control program authorized by the Wisconsin Permit;

  49. An order that the Plaintiffs recover from the Defendants their costs, including reasonable attorneys' fees, incurred in connection with this dispute, as provided for under the ESA, 16 U.S.C. § 1540(g), the Equal Access to Justice Act, 28 U.S.C. § 2412(d), and other applicable law; and

50. Any other, further, or different relief as the nature of this case may require or as the Court deems just and proper.

Dated: July 19, 2006

*Patricia R. Lane*
Patricia Lane, DC # 382842
plane@hsus.org
Jonathan R. Lovvorn, DC # 461163
jlovvorn@hsus.org
The Humane Society of the United States
2100 L Street
NW Washington DC 20037
(202) 955-3669
(202) 778-6132 (facsimile)

Brian B. O'Neill, MN # 82521
boneill@faegre.com
Richard A. Duncan, MN # 192983
rduncan@faegre.com
Elizabeth H. Schmiesing, MN # 229258
eschmiesing@faegre.com
Sanne H. Knudsen, MN # 0344552
sknudsen@faegre.com
**FAEGRE & BENSON LLP**
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
(612) 766-7000
(612) 766-1600 (facsimile)

Attorneys for Plaintiffs The Humane Society of the United States, Animal Protection Institute, Friends of Animals and Their Environment ("FATE"), Help Our Wolves Live ("HOWL"), Indigenous Environmental Network, Klamath Forest Alliance, and RESTORE: The North Woods.

M1:1334685.01

16