# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| HUMANE SOCIETY OF THE UNITED STATES | ) | |
|     et al. | ) | |
| | ) | |
|                 Plaintiffs | ) | 1:06-cv-01279(CKK) |
|     v. | ) | |
| | ) | |
| DIRK KEMPTHORNE, Secretary of the Interior, | ) | |
|     et al. | ) | |
|                 Defendant | ) | |
| | ) | |
|     and | ) | |
| | ) | |
| SAFARI CLUB INTERNATIONAL | ) | |
| 4800 West Gates Pass Road | ) | |
| Tucson, Arizona 85745 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SAFARI CLUB INTERNATIONAL | ) | |
| FOUNDATION | ) | |
| 4800 West Gates Pass Road | ) | |
| Tucson, Arizona  85745 | ) | |
| | ) | |
|     Defendant-Intervenor Applicants | ) | |

## MOTION OF SAFARI CLUB INTERNATIONALAND SAFARI CLUB INTERNATIONAL FOUNDATION TO INTERVENE AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

**MOTION**

Safari Club International ("SCI") and Safari Club International Foundation ("SCIF") (collectively "SCI"), by and through counsel, move pursuant to Federal Rule of Civil Procedure 24 to intervene as a defendant in this action.  In this lawsuit, Plaintiffs, the Humane Society of the United States *et al.,* are attempting to invalidate a permit issued by the U.S. Fish and Wildlife Service ("FWS" or "Service") that authorizes the Wisconsin Department of Natural Resources ("DNR") to use lethal and non-lethal methods to control problem wolves that are attacking and killing livestock and pets and causing other problems.  SCI members interact, sometimes negatively, with wolves in Wisconsin while pursuing recreational activities.  If the State is unable to deal with problem wolves, SCI members' encounters with problem wolves will increase and thereby impair SCI members' interests.  SCI seeks to intervene as a defendant to protect these interests.

Pursuant to L.Cv.R. 7.1(m), counsel for SCI has contacted counsel for both Plaintiffs and Defendants with respect to their position on this Motion.  Plaintiffs' counsel has informed Counsel for SCI that Plaintiffs take no position and will not oppose the intervention as long as there is no enlargement of time in which to file SCI's pleadings and the timing for the preliminary injunction motion is not postponed or delayed beyond the original deadlines imposed by the Court.  SCI will abide by all time deadlines imposed on the Defendants.  Defendants' counsel has informed Counsel for SCI that Defendants take no position on the motion to intervene.

**POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE**

**INTRODUCTION**

Wisconsin's growing wolf population is increasing its range and is encroaching upon areas actively used by Wisconsin residents. Problem wolves are losing their fear of humans and increasingly interfering with the ability of Wisconsin residents and visitors to safely keep their livestock and pets on their land and to participate in outdoor responsibilities and recreational activities. As the size and range of the wolf population grow, so does the frustration of those whose livestock, pets, and hunting prey are attacked and diminished by this recovered predator species. Unless Wisconsin state officials retain the ability to control problem wolves, frustrated Wisconsin residents who wish to participate in outdoor activities, allow their livestock to graze and let their pets out of their houses, will be pressured into taking wolf management into their own hands. These frustrated residents may indiscriminately target any wolves that they encounter, in contrast to the current permitted legal takings in which expert state wildlife management authorities and their agents attempt to eliminate only the problem wolves.

Based on modern scientific information, the enhancement of the survival of a wildlife species requires far more than measures that preserve individual members of a species or that generally increase the population numbers of that species. For predator species that live near or among human populations, enhancement of their survival requires measures that will ensure a peaceful co-existence between animal and man. Reasonable control measures are required to maintain the fragile balance of the physical and social requirements of the competing co-habitants. As proponents of sustainable use conservation and as recreational users of Wisconsin lands, SCI and its members are

interested in the fate of wolves and the states' ability to enhance the survival of the species through proper sustainable use measures.  SCI and its members are also concerned about their ability to enjoy outdoor activities free from the threat of interference by problem wolves.

Plaintiffs seek declaratory and injunctive relief to challenge the FWS's alleged violation of the Section 10(a)(1)A) of the Endangered Species Act ("ESA"), 16 U.S.C. § 1539 (a)(1)(A), and the Administrative Procedures Act, ("APA"), 5 U.S.C. § 706. Plaintiffs want the Court to "second guess" the FWS about the best methods for enhancing the survival of the recovered and growing gray wolf population in Wisconsin. Plaintiffs misconstrue the meaning of Section 10(a)(1)(A) and the ESA in its entirety.  In their single-minded effort to save the life of every single existing wolf, they miss the bigger picture of the need to develop a method by which the now recovered wolf population can be sustained long into the future.

The relief that Plaintiffs seek in this litigation would harm SCI and its members, by undermining the FWS's efforts to enhance the survival of wolves and by interfering with SCI and its members' ability to enjoy safe and productive recreational opportunities in Wisconsin. To defend against this threat to its and its members' interests, SCI seeks, pursuant to Federal Rule of Civil Procedure 24, to intervene in this action as a defendant in support of Defendants Dirk Kempthorne *et al.* ("Defendants").[1]

---

[1] SCI submits a Proposed Answer to Plaintiffs' Complaint for Declaratory and Injunctive Relief as Exhibit "A" to this Motion.

## STATEMENT OF FACTS

**A.    Proposed Intervenors Safari Club International and Safari Club International Foundation**

SCI and the individual members of SCI, have strong interests in enhancing the survival of wolves in a manner that promotes proper wildlife management of this predator species.  SCI members hunt in Wisconsin, frequently encounter wolves, and enjoy and appreciate the FWS and Wisconsin's success with gray wolf recovery.  SCI members' encounters with wolves demonstrate the need for proper control of problem wolves.  As evidenced by the attached Declarations of SCI members, SCI members have witnessed wolves on their properties, in close proximity to their families and pets.  SCI members have also competed with wolves during hunting expeditions and some have lost prey to aggressive wolves.  SCI members have lost family pets and have witnessed the carnage of a wolf attack on these highly valued animals.[2]  SCI members, in ways different than any other existing party to this lawsuit, have an interest in Wisconsin's continued ability to control problem wolves.  SCI seeks to protect Wisconsin's legal authority to manage the state's growing wolf population, target problem wolves, and enhances the long-term survival of a species that must share Wisconsin with its human residents.

SCI is a nonprofit corporation incorporated in the State of Arizona, operating under § 501(c)(4) of the Internal Revenue Code, with principal offices and place of business in Tucson, Arizona.  SCI's Governmental Affairs Office is located in

---

[2] The Declaration of SCI member Bernard Smits is attached as Exhibit "B," the Declaration of SCI member Russell D. Smith is attached as Exhibit "C,"  the Declaration of SCI member Robert W. Jurack is attached as Exhibit "D," and the Declaration of SCI member Steven Gillhouse is attached as Exhibit "E."

Washington, D.C.  Its membership includes approximately 50,000 individuals from the United States and many of the countries around the world.  Its missions are the conservation of wildlife, protection of the hunter, and education of the public concerning hunting and its use as a conservation tool.

SCI carries out its conservation mission through its sister organization, Safari Club International Foundation.  SCIF is a non-profit corporation, incorporated in the State of Nevada, operating under § 501(c)(3) of the Internal Revenue Code, with principal offices and place of business in Tucson, Arizona.   Its missions are conservation of wildlife, education of the public concerning hunting and its use as a conservation tool, and humanitarian services.  The conservation mission of SCIF is: (a) to support the conservation of the various species and populations of game animals and other wildlife and the habitats on which they depend, and (b) to demonstrate the importance of hunting as a conservation and management tool in the development, funding and operation of wildlife conservation programs.  SCIF's Conservation Office is located in Washington, D.C.

The conservation mission of SCIF is carried out by the SCIF professional staff in the SCIF Department of Wildlife Conservation under the guidance of the SCIF Conservation Committee.  These activities include scientific research, enhancement of science-based wildlife management capacity range states, and the compilation and dissemination of data.  A significant percentage of SCI and SCIF's annual revenues, including a portion of the dues and fees paid by each member, goes to support SCIF's conservation efforts around the world.  For the year 2007, for example, SCI has allocated $1.3 million of its annual budget for conservation projects and expenses.   In addition,

each individual chapter of SCI provides its own funding for conservation efforts locally and across the globe.

On staff in SCIF's Washington, D.C. Conservation Department Office is a professional wildlife biologist with more than thirty years of experience working with state wildlife management agencies and professional conservation organizations. He designs, coordinates, supervises and monitors SCIF's conservation efforts in the United States and around the world. In addition, SCIF contracts with independent authorities in a variety of biological and related areas to provide SCIF with cutting-edge data and analysis in the fields of conservation and wildlife management. SCI and SCIF's conservation efforts focus on the concept of "sustainable use" of wildlife. "Sustainable use" recognizes that the utilization of wildlife often produces benefits that provide incentives for conservation. SCIF's biologists have established that conservation does not require non-use of wildlife. More importantly, these experts have shown that non-use can actually be counter-productive to conservation efforts. Well-managed hunting has been a valuable tool in conservation and protection of many game species and associated habitats and biodiversity. The concept of sustainable use has been endorsed and adopted as a key principal of conservation by the International Union for the Conservation of Nature and Natural Resources, the oldest and largest conservation organization in the world, at its 2nd World Conservation Congress. Sustainable use is also one of the three primary principles of the Convention on Biological Diversity, commonly referred to as the Biodiversity Treaty, one of two major treaties opened for signature at the United Nations Conference on Environment and Development in 1992.

### B.     Gray Wolves In Wisconsin

In 1974, the FWS listed gray wolves as "endangered" throughout most of the conterminous U.S.[3]  As a result of recovery efforts by the FWS and the states of Wisconsin, Michigan and Minnesota, the wolf populations of the western Great Lakes area increased dramatically in size and range.  By the year 2000, the number of wolves in Wisconsin, Michigan and Minnesota increased to the point where the FWS determined that it could designate this metapopulation as a Distinct Population Segment ("DPS") of the species and could reclassify this DPS to "threatened" status.  Similar recovery successes were achieved for the wolves populating Idaho, Montana and Wyoming and the Service similarly designated this western population as a DPS ready for reclassification to "threatened" status.  After proposing to downlist these two gray wolf DPSs, the FWS published a Final Rule on April 1, 2003, 69 Fed. Reg. 15804 (April 1, 2003) ("Final Rule") in which the Service divided the conterminous U.S.'s wolf populations into three DPSs, the Eastern, Western and Southwestern, and broadly designated geographical range for each of the DPSs. The Eastern DPSs, range included Wisconsin, Michigan and Minnesota as well as North Dakota, South Dakota, Nebraska, Kansas, Iowa, Missouri, Illinois, Indiana, Ohio, Pennsylvania, New York, New Jersey, Massachusetts, Connecticut, Rhode Island, Delaware, Vermont, New Hampshire and Maine.

Several animal rights and environmental groups filed suit to challenge the Final Rule.   A number of those groups are Plaintiffs in this current litigation.  Two separate cases were filed, one in federal court in Oregon and a second in Vermont.  SCI and SCIF

---

[3] Wolves in Minnesota were listed as "threatened."

participated as Defendant-Intervenors in the litigation brought in federal district court in Oregon in which many of the Plaintiffs in the instant litigation challenged the FWS Final Rule to reclassify wolves from "endangered" to "threatened" status.  *Defenders of Wildlife v. Norton*, 354 F. Supp. 2d 1156 (D. Or. 2005).  SCI also participated an amicus in similar litigation brought by several other groups in the federal district court in the District of Vermont.  *National Wildlife Federation v. Norton*, 386 F.Supp. 2d 553 (D.Vt. 2005).  Both the Oregon and Vermont Courts enjoined and vacated the Final Rule, rejecting the Service's application of its own DPS policy and the FWS's interpretation and application of statutory listing criteria.  Neither court offered any opinion about the propriety of or need for lethal control of depredating wolves.  However, since the Courts' ruling caused wolves to lose their "threatened" status, the 4(d) rule, which could apply only to "threatened" species, also became invalid.

When the two Courts' rulings returned wolves to "endangered" status, the state of Wisconsin found itself without any means of controlling the state's increasing difficulties with human/wolf encounters and wolves preying on Wisconsin residents' livestock and pets.  Although regulatory management authority was no longer available, depredation control of "endangered" species remained possible via permit authority pursuant to ESA § 10(a)(1)(A), 16 U.S.C. § 1539(a)(1)(A).  Wisconsin applied for that authority and the FWS granted the state a subpermit in April of 2005.  Several animal rights organizations, including several of the Plaintiffs to this litigation, filed suit to challenge the procedure by which the FWS issued the subpermit to Wisconsin.  The U.S. District Court of the District of Columbia, on the Plaintiffs' motion for a preliminary injunction, determined that the subpermit had been issued in violation of the procedures required by the ESA, 16

U.S.C. § 1539, and the APA.  As a result, the FWS withdrew Wisconsin's wolf depredation control authority on September 13, 2005.

On September 6, 2005, Wisconsin submitted a new permit application for wolf depredation control authority.  The FWS published Notice of the application in the Federal Register on September 14, 2005.  70 Fed. Reg. 54401.  On October 14, 2005, SCI submitted comments in support of Wisconsin's application for the permits that the Plaintiffs challenge.  A copy of those comments is attached to this Motion as Exhibit "F." The FWS published a Draft Environmental Assessment for the Management of Wolf Conflicts and Depredating Wolves in March 2006 and solicited public comment.  On April 3, 2006, SCI submitted comments to the FWS in response to the "Draft Environmental Assessment for the Management of Wolf Conflicts and Depredating Wolves in Wisconsin."  A copy of those comments are attached to this Motion as Exhibit "G."  Finally, the FWS published a Final Environmental Assessment and granted Wisconsin's permit in April 2006.  As of the date of this Motion, Wisconsin has found it necessary to use this permit authority to take 16 depredating wolves.

## **RELEVANT LAW**

Congress has given the FWS complete discretion to decide what types of activities will "enhance the survival" of "endangered" wildlife and whether to permit those activities.  The FWS designates a species as "endangered" when one or more of the following risk factors places the species in danger of extinction throughout all or a significant portion of its range.

> (A) the present or threatened destruction, modification, or
>  curtailment of its habitat or range;
> (B) overutilization for commercial, recreational, scientific, or
>  educational purposes;

(C) disease or predation;
(D) the inadequacy of existing regulatory mechanisms; or
(E) other natural or manmade factors affecting its continued
    existence.

16 U.S.C. §§ 1532(6) and 1533.   Once a species is listed as "endangered," the ESA

prohibits certain conduct with respect to that species, including the "taking" of that

species within the United States.  *Id.* § 1538(a)(1)(B).  The statute's prohibition against

the "taking" of an "endangered" species is not absolute.  The ESA empowers the

Secretary of the Interior to issue a "permit" allowing any action otherwise prohibited by

Section 1538, including the taking of an "endangered" species, if such action is to be

conducted "to enhance the propagation or survival of the affected species."  *Id.* §

1539(a)(1)(A) ("enhancement permits").

        Moreover, the agency discretion authorized by Section 1539(a)(1)(A) is broader

and less restricted than most other administrative authorities granted by the ESA.  Much

of the FWS's authority to administer the ESA is constrained by the statute's conservation

policies, 16 U.S.C. § 1531(c).  The authority to grant "enhancement" permits is not

constrained in this manner.   The term "conservation" is noticeably missing from the

criteria Congress used to describe the FWS's authority to issue "enhancement" permits.

        The Secretary may permit, under such terms and conditions as he shall
        prescribe –
                (A) any act otherwise prohibited by section 1538 of this title for
                    scientific purposes or to enhance the propagation or survival of
                    the affected species . . .

16 U.S.C. § 1539(a)(1)(A).  Instead of giving the FWS the power to issue permits to

promote "conservation," Congress gave the agency the authority to grant permits to

enhance the survival of the species.  The significance of this choice of language becomes

clearer with an examination of the manner in which Congress chose to define the term "conservation.

> The terms "conserve", "conserving", and "conservation" mean to use and the use of all methods and procedures which are necessary to bring any endangered species or threatened species to the point at which the measures provided pursuant to this chapter are no longer necessary. Such methods and procedures include, but are not limited to, all activities associated with scientific resources management such as research, census, law enforcement, habitat acquisition and maintenance, propagation, live trapping, and transplantation, and, ***in the extraordinary case where population pressures within a given ecosystem cannot be otherwise relieved, may include regulated taking.***

(emphasis added) 16 U.S.C. § 1532(3).   Any potential limitations on the use of "taking" as a wildlife management tool that might be suggested by the definition of "conserve" are noticeably absent and therefore inapplicable to the FWS's ability to grant a permittee the authority to conduct any kind of activity that would "enhance the survival" of an "endangered" species.

## STATUS OF THE LITIGATION

Plaintiffs filed their Complaint on July 19, 2006 and their Motion for Preliminary Injunction on July 25, 2006.  In a telephone conference that occurred on July 26, 2006, this Court ordered Defendants to file their Opposition to Plaintiffs' Motion for Preliminary Injunction by 5:00 P.M. on August 1, 2006.  SCI is filing this Motion to Intervene, a Motion for Leave to Participate in the Determination of the Preliminary Injunction, a Proposed Response to the Motion for Preliminary Injunction and a Proposed Answer to Plaintiffs' Complaint, all within the time constraints set for Defendants' Opposition to Plaintiffs' Motion for a Preliminary Injunction.

At that same telephone conference on July 26, 2006, this Court ordered Plaintiffs to file any reply documents by 5:00 P.M. on August 3, 2006.  On July 28, 2006, SCI

alerted Plaintiffs of SCI's intention to file a Motion to Intervene and to file a Proposed

Response to the Motion for a Preliminary Injunction and on August 1, 2006, SCI

provided Plaintiffs with copies of these documents in order to give Plaintiffs the same

opportunity to respond to SCI's filings as the Court allocated for Plaintiffs' reply to

Defendants' Opposition.

To SCI knowledge, there have been no other substantive pleadings or motions

filed between the date of the filing of Plaintiffs' Motion for a Preliminary Injunction and

this Motion to Intervene.

## ARGUMENT

### A.      SCI is Entitled to Intervene As of Right Under Federal Rule 24(a)(2).

SCI, whose interests (including the interests of SCI members) will be injured by

the relief that Plaintiffs seek and as parties who are not adequately represented by the

existing parties in this case, are entitled to intervene as of right in this litigation.  Federal

Rule of Civil Procedure 24(a)(2), which governs intervention as of right, states in

pertinent part:

> Upon timely application anyone shall be permitted to intervene in an
> action . . . when the applicant claims an interest relating to the property or
> transaction which is the subject of the action and the applicant is so
> situated that the disposition of the action may as a practical matter impair
> or impede the applicant's ability to protect that interest, unless the
> applicant's interest is adequately represented by existing parties.

The D.C. Circuit has determined that intervention as of right depends upon the

applicants' ability to satisfy five prerequisites:  (1) the timeliness of the motion; (2) a

showing of "adequate interest";  (3) a possible impairment of that interest;  (4) a lack of

adequate representation by the existing parties to the action; and 5) standing to sue.  *Fund*

*for Animals v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003).  SCI satisfies each of these five prerequisites.

### 1.    <u>This Motion is Timely</u>

SCI has promptly moved to intervene in this litigation. This litigation is less than two weeks old and is still in the earliest stages of development.  Defendants have not yet responded to Plaintiffs' Complaint, and their Opposition to Plaintiffs' Motion for a Preliminary Injunction is being filed at the same time that SCI's Motions are being filed. SCI has acted promptly and has responded to this litigation within the time schedule that the Court has set for the Defendants' responses.  No prejudice will come to any party from the granting of this motion at this stage of the litigation, or from allowing SCI to participate in the determination of Plaintiffs' Motion for a Preliminary Injunction.  *See NAACP v. New York*, 413 U.S. 345, 366, 93 S.Ct. 2591 (1973).  Consequently, this Motion to Intervene meets the timeliness prerequisite.[4]

### 2.    <u>SCI's Substantial Legal Interest</u>

SCI has a substantial legal interest in the subject matter of this suit – the ability of the State of Wisconsin to manage its resident wolf population so as to enhance the survival of the species.  SCI and SCIF are organizations that promote the principle and practice of sustainable use conservation.   The authority that the FWS has granted

---

[4] On at least two recent occasions, courts have allowed SCI to intervene and/or to participate in substantive dispositive motions on or before the date that the Court granted SCI's intervention.  *Fund for Animals v. Mainella*, 294 F.Supp.2d 46 (D.D.C. 2003) (Court granted SCI's Motion to Intervene at hearing on Plaintiffs' Motion for Preliminary Injunction and permitted counsel for SCI to submit Opposition and to participate in oral argument to oppose the preliminary injunction.); *Cary et al. v. Hall*, Civ. No. 3:05-cv-04363 (VRW) (California District Court granted SCI leave to participate in the oral and written argument concerning Defendants' Motion to Dismiss despite the fact that the Court had not yet ruled on SCI's Motion to Intervene).

Wisconsin is an excellent demonstration of this valuable wildlife management tool.  In many circumstances, a species' survival depends upon the managing authority's ability to control that species' population, habitat use, predation and other behaviors.  Moreover, that species' survival depends upon the nature of its interaction with humans and humans' ability to tolerate and peacefully co-exist with that wildlife.  In the circumstances at issue in this case, wolf numbers in Wisconsin have grown and wolves have significantly increased their range.  Wolves are freely encroaching in areas of human development and use, and many have become relatively fearless to the point where they are violently attacking livestock and pets, even while humans are within plain view.

The Declarations of SCI members Bernard Smits, Russell D. Smith, and Robert W. Jurack, attached to this motion as Exhibits "B," "C" and "D" respectively, demonstrate the dangerous and disturbing encounters SCI members have had with wolves in Wisconsin, as well as the losses that SCI members have suffered from wolves' predatory behavior.  For example, SCI members Bernard Smits and Russell D. Smith each competed directly with wolves for prey.   In fact, SCI member Russell D. Smith lost the competition, finding nothing left of the deer he had successfully hunted, once he returned to retrieve it.  SCI member, Robert W. Jurack spotted wolves tracking his pet Labrador Retrievers as potential prey.

For intervention as of right, a party must assert an interest in the subject matter of the suit.  *Foster v. Gueory*, 655 F.2d 1319, 1324 (D.C. Cir. 1981). The interest need not be a direct one in the property or transaction at issue, provided that it is an interest that would be impaired by the outcome of the litigation.  *Cascade Natural Gas Corp. v. El*

15

*Paso Natural Gas Co.*, 386 U.S. 129, 135-36 (1967). The D.C. Circuit has defined the interest test as one of efficiency rather than one of exclusivity. In the case of *Nuesse v. Camp*, 385 F.2d 694 (D.C. Cir. 1967), the Circuit Court explained that '[t]he 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." 385 F.2d at 700.

SCI possesses the requisite interest in issues in this litigation. As conservationists, SCI and its members seek a solution that will enable Wisconsin wildlife officials and their agents to control problem wolves, and at the same time reduce the frustration that has led Wisconsin residents to take matters into their own hands and to lash out against the wolf population indiscriminately. SCI members are also among those Wisconsin residents who seek to protect their pets and their ability to enjoy Wisconsin's outdoor activities free from the dangerous and damaging predatory behavior of problem wolves. Consequently, SCI should be permitted to intervene to protect these interests.[5]

### 3.    Plaintiffs' Proposed Relief Will Impair These Legal Interests

If Plaintiffs succeed in this litigation, Wisconsin will lose the one method of control it has been given to deal with problem wolves and to reduce the number of wolf predation incidents. Currently, Wisconsin is effectively using their permit authority to deal with aggressive problem wolves that make repeated attacks on Wisconsin livestock and pets. A log maintained by Wisconsin Department of Natural Resource officials and U.S. Department of Agriculture Wildlife Services personnel demonstrates the incidents

---

[5] The Declaration of SCI Legal Task Force Chairman Kevin Anderson is attached as Exhibit "H" as evidence of SCI's interest in enhancement of survival via sustainable use tools.

reported to these wildlife management officials that have prompted their use of permit authority.[6]  If Plaintiffs prevail in this litigation, Wisconsin will lose the ability to deal with the types of incidents described in these reports.

Nothing is surprising about the frustration and anger that Wisconsin residents experience when they see their wildlife management authorities powerless to protect them from wolf predation on their prized livestock and beloved pets and who find themselves in an increasing number of situations where they are coming in contact with predators which have lost their fear of humans.  There is also nothing astounding about the fact that these frustrated and angry residents will increasingly resort to their own devices, albeit illegal ones, in order to safeguard their animals, themselves and their ability to enjoy Wisconsin's outdoor opportunities.  If Plaintiffs prevail, SCI's interests in sustainable use wolf conservation and SCI members' interests in safety and enjoyment of recreational opportunities will be jeopardized if not lost.  SCI should have the right to defend against this litigation threat.

### 4.     The Parties to this Action Offer Inadequate Representation

Although the federal government intends to defend against Plaintiffs' challenges, they are nonetheless unable to adequately protect SCI's interests and do not share those exact interests.[7]  The Federal government does not enjoy recreational activities in Wisconsin or engage in any activities that brings it into direct conflict with the wolves. The Federal government does not have its livestock, pets, and hunted prey killed or taken

---

[6] Wisconsin Cooperative Wildlife Damage Control Program Gray Wolf Project Reports are attached as Exhibit "I." and the Declaration of Anna M. Seidman is attached as Exhibit "J"

[7] Plaintiffs, of course, cannot and will not represent SCI's interests.

by wolves in Wisconsin.  In short, the Federal government does not share the same interests as SCI and its members.

Even though Defendants intend to defend their conduct and their authority to issue Wisconsin's enhancement permit, they still do not adequately represent SCI and SCI members' stake in this litigation.  Defendants, by necessity, come to this litigation with ambivalent if not conflicting motivations.  The FWS's purposes are divided because the agency bears an obligation to represent the interests of all those who enjoy and seek to conserve wolves, including individuals who do not support sustainable use conservation and those who do not believe that a species' survival can be accomplished through any form of lethal take.

To satisfy the "inadequate representation" standard for intervention as of right, an intervenor-applicant need only show that the existing representation "may be" inadequate, and the showing required is "minimal." *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972).  Moreover, even where the potential intervenor's interest in the issuance or administration of a specific regulation may coincide with that of a defendant regulatory agency, that interest, by itself, does not necessarily mean that "adequacy of representation is ensured for purposes of rule 24(A)(2)." *Natural Resources Defense Council v. Costle*, 561 F.2d 904, 912 (D.C. Cir. 1977).  "[M]erely because parties share a general interest in the legality of a program or regulation does not mean their particular interests coincide so that representation by the agency alone is justified." *American Horse Protection v. Veneman*, 200 F.R.D. 153, 158 (D.D.C. 2001).  Similarly, in *Fund for Animals v. Norton*, 322 F.3d 728, 737 (D.C. 2003), the Court of Appeals for the District of Columbia Circuit found

18

that the FWS could not adequately represent the "more narrow and parochial" interests of the country of Mongolia in litigation challenging the FWS' listing and importation obligations with respect to foreign species of argali sheep, even though both entities involved in the litigation were involved in efforts to conserve the sheep species and were attempting to defend the legality of the same ESA regulation.  "[E]ven 'a shared general agreement ... does not necessarily ensure agreement in all particular respects,' … and '[t]he tactical similarity of the present legal contentions of the [parties] does not assure adequacy of representation or necessarily preclude the [intervenor] from the opportunity to appear in [its] own behalf,'" *Nuesse v. Camp*, 385 F.2d 694, 703 (D.C. Cir. 1967).

The FWS may be concerned about defending the validity of the permit it issued to Wisconsin, but SCI has a broader interest in both defending sustainable use methods generally as a means of enhancing the survival of "endangered" species and enjoying recreational and personal activities with which the problem wolves interfere. Consequently, SCI's focus may be much narrower and yet much deeper than that of the FWS.  The D.C. Court of Appeals has acknowledged the potential benefits offered by an intervenor whose depth of interest can enhance the defense provided by a more broadly concerned governmental entity.  *See Natural Resources Defense Council v. Costle,* 561 F.2d 904, 912 (D.C. Cir. 1977) (intervenor "likely to serve as a vigorous and helpful supplement to [agency's] defense.").

Where, as here, a federal agency is obligated to represent the interests of different groups with competing motivations, the agency cannot adequately represent the interests of all of these groups at the same time. *Trbovich*, 92 S.Ct. at 636.  Consequently, while SCI may share some common interests with defendants, the obligations of the FWS to a

larger constituency make it impossible for defendants to provide representation that will protect the unique and sometimes contrary interests of SCI and the members of SCI.

5.    **Standing to Intervene**

After questioning the need for defendant-intervenors to show standing at all, the D.C. Circuit has held that "any person who satisfies Rule 24(a) will also meet Article III's standing requirement." *Roeder v. Islamic Republic of Iran,* 333 F.3d 228, 233 (D.C. Cir. 2003). Thus, for the same reasons that SCI is entitled to intervene as of right under Rule 24(a), SCI also satisfies all of the criteria for standing necessary to intervene as a defendant in this action. SCI has an interest in the FWS and the state of Wisconsin's efforts to enhance the survival of the gray wolf on a long-term basis, including the lethal take of problem wolves. In addition, SCI and its members have an interest in safe outdoor recreational opportunities, the protection of their pets and animal companions from wolf attack, as well as productive and enjoyable hunting activities in Wisconsin. The conservation and recreational interests maintained by SCI have long been accepted as a basis for Constitutional standing. *National Wildlife Federal v. Hodel*, 829 F.2d 694, 704 (D.C. Cir. 1983); *Fund for Animals v. Norton,* 295 F. Supp. 2d 1, 2 (D.D.C. 2003) (noting that the court had earlier in the case allowed intervention of SCI and other hunting organizations in lawsuit concerning game animals); *Save Our Sonoran, Inc. v. Flowers,* 408 F.3d 1113, 1119 (9th Cir. 2005) ("The 'injury in fact' requirement in environmental cases is satisfied if an individual adequately shows that she has an aesthetic or recreational interest in a particular place, or animal, or plant species and that that interest is impaired by a defendant's conduct.") (citation omitted).

The threat to SCI's interests will be redressed (prevented) if Plaintiffs' efforts fail.

If Plaintiffs are unsuccessful in this litigation, the state of Wisconsin will retain its authority to effectively control problem depredating wolves, and will be able to continue to practice sustainable use methods to enhance the survival of this predator species, and to provide recourse and protection for those injured and threatened by aggressive wolf behavior.

Finally, standing for associations attempting to intervene on behalf of their members exists when 1) the members would otherwise have standing to sue in their own right; 2) the interests that the associations seek to protect are germane to the organization's purpose; and 3) neither the claim asserted nor the relief requested requires the participation in the lawsuit of the individual members. *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 341, 97 S. Ct. 2434, 53 L.Ed.2d 383 (1977). SCI meets these requirements because 1) SCI's members hunt and otherwise seek to enjoy Wisconsin's outdoor opportunities in areas where problem wolves are present, threaten to interfere with these opportunities, and are threatened by reprisals from frustrated Wisconsin residents; 2) the right to hunt, enjoy outdoor recreational opportunities to practice sustainable use conservation of predator species is germane to SCI and SCIF's mission; and 3) the relief requested by Plaintiffs does not require the direct participation of SCI's individual members.

### B.    Alternatively, SCI Should be Permitted to Intervene Permissively Under Rule 24(b)(2)

Should this Court choose not to grant SCI leave to intervene as of right, SCI alternatively seek permissive intervention under Fed. R. Civ. P. 24(b), which states:

> Upon timely application anyone may be permitted to intervene in an action; . . . (2) when an applicant's claim or defense in the main action have a question of law or fact in common . . .. In exercising its discretion

the Court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

This burden for permissive intervention is substantially less than the test for intervention as of right under Rule 24(A)(2).[8]

SCI should be entitled to permissive intervention because the defenses that SCI raises, such as the FWS's authority under the ESA to permit sustainable use enhancement methods of survival, share an obvious factual and legal basis with Plaintiffs' claims. SCI's defense relies, in part, on the premise that Congress' decision to add Section 10(a)(1)(A) permit authority to the ESA gave the FWS express license to "think outside the box" and to facilitate "endangered" species survival through methods that might otherwise be prohibited by other provisions of the ESA. Consequently, Plaintiffs' challenges to the very principle of legal taking being sanctioned by the ESA and SCI's sustainable use defenses share questions of law and fact.

SCI's permissive intervention at this stage of the litigation will do nothing to prejudice or cause delay to any party. As this case is still in its very earliest stages of preparation, since Defendants have not yet even filed their response to Plaintiffs' Complaint, and since SCI has coordinated the filing of its Motion to Intervene with the Defendants' schedule for responding to Plaintiffs' Motion for a Preliminary Injunction, SCI's intervention will not cause delay, much less undue delay, to any party.

The severity of the consequences to wolf survival and to the ability of Wisconsin's residents, including SCI members, to peacefully co-exist with the state's wolf population justifies the participation of SCI in this action. If intervention as of right

---

[8] Permissive intervention is not a substitute for intervention as of right. If the party qualifies for intervention under Rule 24(a), the Court must grant that status. Fed. R. Civ. P. 24(a).

is not granted, permissive intervention should be allowed.

## **CONCLUSION**

SCI satisfies the requirements for intervention as of right and permissively.  This motion is timely and supports the substantial interests that SCI and SCI members have in the gray wolf of Wisconsin, in the ability of the FWS to take the action or inaction necessary to enhance the survival of this species, and in the ability of SCI members to peacefully co-exist with wolves in Wisconsin for the long-term.  The Defendants in this action will defend their conduct, but do not share SCI's interest in recreational activities in Wisconsin and Defendants must defend this case in a way that will balance the competing interests of the diverse groups who claim an interest in enhancing the survival of wolves.  Without SCI's participation, the interests of non-governmental persons and entities who support wolves through necessary and valuable sustainable use methods will not adequately be protected.

WHEREFORE, SCI respectfully request that this Court grant its Motion to Intervene.

Dated August 1, 2006.

Respectfully Submitted,

Anna M. Seidman
(D.C. Bar No. 417091)
501 2nd Street N.E.
Washington, D. C.  20002
Telephone: (202)-543-8733
Facsimile: (202)-543-1205
**aseidman@sci-dc.org**
Counsel for

Safari Club International and
Safari Club International Foundation


Douglas S. Burdin
(D.C. Bar No. 434107)
501 2nd Street N.E.
Washington, D. C.  20002
Telephone: (202)-543-8733
Facsimile: (202)-543-1205
**dburdin@sci-dc.org**
Counsel for
Safari Club International and
Safari Club International Foundation