Safari Club International and Safari Club International Foundation
Motion to Intervene

# Exhibit "F"



Regional Director
Attn: Pete Fasbender
U.S. Fish and Wildlife Service
Ecological Services
1 Federal Drive
Fort Snelling, Minnesota 55111-4056

permitsR3ES@fws.gov

Re: TE111357, TE111360

Dear Mr. Fasbender:

Safari Club International presents these comments in support of the applications submitted by the States of Michigan and Wisconsin to conduct activities that will enhance the survival of their gray wolf populations. SCI supports the issuance of these permits because we are confident that the activities that the permits would authorize will enhance the survival and recovery of the gray wolf by reducing the number of verified problem wolves that are preying on livestock and other domestic animals of value to the citizens of those states. By attaining the ability to reduce and/or minimize the impact of these problem wolves, Michigan and Wisconsin will gain an effective tool for improving public attitude about wolves.

Specifically, Michigan's permit application seeks authority to (1) conduct lethal control of wolves involved in confirmed depredation of livestock or other domestic animals; (2) conduct non-lethal, injurious harassment of wolves that pose a threat to livestock and other domestic animals; and (3) designate other agencies and tribal governments, organizations and private individuals to conduct the aforementioned activities. Similarly, Wisconsin seeks to take up to 50 wolves or about 10% of the population of wolves by trapping or shooting them where wolves have attacked and killed or injured domestic animals.

Many farmers, ranchers and hunters who are suffering personal and economic losses from depredating problem wolves feel powerless to protect their property and livelihoods and believe that their state governments are similarly powerless to control the harmful activities of this predator species. The perceived impotency suffered by these citizens and the desire to protect their interests have frustrated many and have seriously undermined the support of the presence of wolves in these states. To ensure continued support for wolves, the states must find a way to give their citizens a measure of confidence in the states' ability to protect their property, and to reduce the citizen's frustration. The requested permits will give the states the necessary tool. Michigan, in its permit application correctly describes the proposed effect of the permit authority as follows:

> The objectives of the proposed activities are to minimize depredation by wolves on domestic animals. By responding effectively to depredation concerns, we will be able to minimize the development and resentment for the wolf population.

Similarly, the state of Wisconsin bases its permit application, in part, on the need to "eliminate depredating wolves and packs from the state to resolve depredation problems and maintain public support for wolf conservation." Wisconsin explains that "[d]epredation control activities would allow removal of problem wolves so that non-depredating wolves can continue to flourish and public tolerance of wolves would remain more positive."

SCI intervened in the litigation brought by Defenders of Wildlife and other plaintiffs and SCI argued in defense of the FWS's decision to reclassify wolves from "endangered" to "threatened" status, as well as in defense of the Service's decision to issue a "4(d)" rule to give the states the authority to take depredating wolves. That important authority disappeared when the Oregon District Court invalidated the "threatened" classification and the 4(d) rule.

Although SCI continues to believe that the wolf population of Michigan, Minnesota and Wisconsin has met all of the objectives to be reclassified from its "endangered" status, SCI nonetheless recognizes that the wolf population in these states would benefit from an improvement in public attitudes that have been undermined by the state's inability to deal with problem wolves. The lethal take of depredating wolves is the only tool that has proven effective in reducing wolf problems and in reversing the inefficacy felt by those who must deal with depredating wolves. As explained by Steven Fritts in "A Greater Tolerance: The Coexistence of Wolves and Humans" published in International Wolf, The quarterly Publication of the International Wolf Center, Vol. 10, No., Spring 2000:

> Another reason to take action against wolves is increased depredations on livestock and pets. This problem creates economic losses and causes resentment against wolves and those who venerate them. Some believe this problem can be solved through changes in farm management practices and nonlethal means such as guard dogs and scare devices. While most Americans prefer those nonlethal approaches, the hard truth is that killing problem wolves is the most effective tactic available and often the only option. No viable substitute is in sight.

Although SCI agrees with the States' applications and the requested authority, SCI would suggest one modification to the permit authority sought by Michigan and Wisconsin. The two states seek the ability to lethally take wolves that engage in the predation of livestock and other domestic animals. Specifically excluded from the states' definition of "domestic animals" are hunting dogs and other dogs that range freely yet remain under their owners' control. SCI submits that the permits should provide the two states with the authority to conduct legal take of wolves that prey on these dogs as well, as these domestic animals have great value to their owners, and the loss of these animals engenders the same feeling of powerlessness that the States seek to rectify with permit authority.

In conclusion, SCI supports the permit applications submitted by the states of Michigan and Wisconsin and suggests that permits be issued for the lethal and non-lethal take of wolves that prey on livestock and other domestic animals including hunting dogs.

4

Sincerely,

Mike Simpson
President
Safari Club International