# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued March 17, 2008                    Decided June 3, 2008

Nos. 06-5396 & 06-5397

THE HUMANE SOCIETY OF THE UNITED STATES, ET AL.,
APPELLEES

v.

DIRK KEMPTHORNE ET AL.,
APPELLANTS

SAFARI CLUB INTERNATIONAL FOUNDATION AND
SAFARI CLUB INTERNATIONAL,
APPELLANTS

———

Appeals from the United States District Court
for the District of Columbia
(No. 06cv01279)

———

*Ronald M. Spritzer*, Attorney, United States Department of Justice, argued the cause for the federal appellants. *Andrew C. Mergen* and *M. Alice Thurston*, Attorneys, were on brief. *R. Craig Lawrence*, Assistant United States Attorney, entered an appearance.

*Anna M. Seidman* argued for Safari Club International and Safari Club International Foundation. *Douglas S. Burdin* was on brief.

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

FILED    JUN   3 2008

CLERK

2

*Sanne H. Knudsen* argued for the appellees. *Brian B. O'Neill, Richard A. Duncan,* and *Jonathan R. Lovvorn*, were on brief. *Patricia R. Lane* entered an appearance.

Before: HENDERSON, *Circuit Judge*, and EDWARDS and WILLIAMS, *Senior Circuit Judges*.

Opinion for the court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*:    Dirk Kempthorne, Secretary of the United States Department of the Interior (Secretary), the Fish and Wildlife Service (FWS) of the Department of the Interior (Interior) and H. Dale Hall, Director of the FWS (collectively federal appellants), together with the Safari Club International and Safari Club International Foundation (collectively Safari Club), appeal the district court judgment enjoining the FWS "from authorizing the lethal take of any more gray wolves for depredation control purposes" by the Wisconsin Department of Natural Resources (Wisconsin DNR). *Humane Soc'y of the United States v. Kempthorne*, CV06-1279, slip op. at 34 (Aug. 9, 2006); *id.* Order (Sept. 6, 2006). The Humane Society of the United States (Humane Society) and other environmental organizations[1] had sought the injunction because, in their view, the gray wolf, as an endangered species, could not be the object of a lethal depredation control program under the Endangered Species Act (ESA), 16 U.S.C. §§ 1531 *et seq.* The district court agreed. While the appeal was pending, Interior removed the gray wolf population located in the Western Great Lakes Region (which includes Wisconsin) from the endangered species list. *See* Final Rule Designating the Western Great Lakes Populations of Gray

---

[1]The other organizations include the Animal Protection Institute, Friends of Animals and Their Environment, Help Our Wolves Live, the Indigenous Environmental Network, the Klamath Forest Alliance and RESTORE: The North Woods.

3

Wolves as a Distinct Population Segment; Removing the
Western Great Lakes Distinct Population Segment of the Gray
Wolf From the List of Endangered and Threatened Wildlife, 72
Fed. Reg. 6052 (Feb. 8, 2007).  The parties agree that the
delisting moots the appeal.  The federal appellants and the Safari
Club have moved to vacate the district court judgment and the
Humane Society opposes vacatur.  For the reasons set forth
below, we grant the appellants' motion and vacate the district
court judgment.

## I.

The ESA protects species of fish and wildlife listed as
endangered or threatened by making it unlawful for any person
to "take any such species within the United States."  16 U.S.C.
§ 1538(a)(1)(B).[2]  Nevertheless, section 10(a)(1)(A) of the ESA
authorizes the Secretary to "permit . . . any act otherwise
prohibited by section 1538 of this title for scientific purposes or
to enhance the propagation or survival of the affected species,
including, but not limited to, acts necessary for the
establishment and maintenance of experimental populations."
16 U.S.C. § 1539(a)(1)(A).

Since 1978 the gray wolf has been listed as an endangered
species in 47 states.[3]  In recent years, the gray wolf population
in Wisconsin has exceeded the recovery goal, resulting in wolf
depredation of livestock and domestic animals.  Set of Findings:
Wisconsin Department of Natural Resources Wolf Depredation
Permit (TE111360), 2-4 (Apr. 24, 2006). The FWS concluded

---

[2]"The term 'take' means to harass, harm, pursue, hunt, shoot,
wound, kill, trap, capture, or collect, or to attempt to engage in any
such conduct."  16 U.S.C. § 1532(19).

[3]*See* Reclassification of the Gray Wolf in the United States and
Mexico, with Determination of Critical Habitat in Michigan and
Minnesota, 43 Fed. Reg. 9607 (March 9, 1978).

4

that depredation endangers gray wolf recovery because "[i]f the State or Federal government does not act, livestock owners likely will act and their actions could lead to the indiscriminate killing of wolves." *Id.* at 2 (citation omitted). Accordingly, in 2003 the FWS, in conjunction with the Wisconsin DNR, attempted to implement a depredation control program in Wisconsin.

Pursuant to section 4(d) of the ESA—which applies only to threatened species—the Secretary is authorized to promulgate regulations "as he deems necessary and advisable to provide for the conservation of such species." 16 U.S.C. § 1533(d). In 2003, the depredation control program was established as one such regulation.[4] In the regulation, the FWS reclassified the gray wolf in certain states (including Wisconsin) from endangered to threatened and simultaneously promulgated a section 4(d) rule to permit the taking of gray wolves in those regions.[5] Different environmental organizations challenged the rule, however, and two federal district courts invalidated the FWS's reclassification of the gray wolf as threatened and, accordingly, enjoined the depredation control programs. *See Defenders of Wildlife v. Sec'y, U.S. Dep't of the Interior*, 354 F. Supp. 2d 1156 (D. Or. 2005); *Nat'l Wildlife Fed'n v. Norton*, 386 F. Supp. 2d 553 (D. Vt. 2005).

In February 2005, with the gray wolf having been returned to endangered status, the Wisconsin DNR applied for a depredation control permit pursuant to section 10(a)(1)(A) of the

---

[4]*See* Final Rule to Reclassify and Remove the Gray Wolf from the List of Endangered and Threatened Wildlife in Portions of the Conterminous United States; Establishment of Two Special Regulations for Threatened Gray Wolves, 68 Fed. Reg. 15,804, 15,868 (Apr. 1, 2003).

[5]68 Fed. Reg. at 15,809-11, 15,868.

5

ESA. In contrast to section 4(d), which permits the Secretary to issue regulations allowing the taking of a *threatened* species as the Secretary "deems necessary and advisable to provide for the conservation of such species," section 10(a)(1)(A) permits the Secretary to issue regulations allowing the taking of an *endangered* species "for scientific purposes or to enhance the propagation or survival of the affected species" only.[6] On April 1, 2005 the FWS issued a section 10 depredation control permit to the Wisconsin DNR[7] but the district court invalidated the permit because the FWS had failed to provide for notice and comment before issuing it. *See Defenders of Wildlife v. Norton*, No. 05cv1573 (D.D.C. Sept. 13, 2005).

The Wisconsin DNR immediately reapplied for a section 10 permit[8] and, following a public comment period, the FWS issued a new section 10 permit on April 24, 2006. *See* Federal Fish and Wildlife Permit, No. TE111380-0 (Apr. 24, 2006). The permit, which was effective from April 24, 2006 until December 31, 2006, permitted the Wisconsin DNR to euthanize up to 43 wolves subject to several conditions, including that "[l]ethal wolf control is preceded by verification that wolves were involved in the depredation," "depredation occurred on lawfully present domestic animals, including livestock" and "[d]epredation at the site is likely to continue in the immediate future if the depredating wolf or wolves are not removed." *Id.*

---

[6]*See* ESA § 10(a)(1)(A), 16 U.S.C. § 1539(a)(1)(A).

[7]*See* Authorization to Use Region 3 Endangered and Threatened Species Permit to Carry Out the Following Activities Within the State(s) of Wisconsin (Apr. 1, 2005) (authorizing the taking of up to 34 wolves).

[8]*See* Notice of Receipt of Applications, 70 Fed. Reg. 54,401 (Sept. 14, 2005).

6.

The Humane Society sought preliminary injunctive relief in the district court on July 25, 2006, claiming that section 10 of the ESA does not authorize the FWS to issue a permit for a lethal depredation control program for an endangered species. Safari Club then moved to intervene as of right to defend the legality of the permit,[9] arguing that its members "hunt in Wisconsin, frequently encounter wolves, . . . have witnessed wolves on their properties, in close proximity to their families and pets[,] . . . have also competed with wolves during hunting expeditions[,] . . . have lost prey to aggressive wolves . . . [and] have lost family pets and have witnessed the carnage of a wolf attack on these highly valued animals." Mot. to Intervene 5 (Aug. 1, 2006).

On August 9, 2006, the district court both granted Safari Club's motion to intervene and issued a preliminary injunction prohibiting the FWS from authorizing the Wisconsin DNR to engage in the lethal take of gray wolves for the purpose of depredation control. *See Humane Soc'y of the United States v. Kempthorne*, No. 06cv1279 (Aug. 9, 2006). The court converted the preliminary injunction into a final judgment on the merits on September 6, 2006 and the federal appellants and Safari Club filed timely notices of appeal on November 1, 2006 and November 13, 2006, respectively. *See* Federal Rules of Appellate Procedure 4(a)(1)(B), 4(a)(3).

On February 8, 2007, Interior promulgated its final rule removing the gray wolf in the Western Great Lakes Region from

---

[9]*See* Fed. R. Civ. P. 24(a)(2) ("On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.").

7

the endangered and threatened species list.[10] *See* 72 Fed. Reg.
6052. Because the gray wolf is no longer a protected species,
the ESA no longer prohibits the Wisconsin DNR from taking the
species. Accordingly, Safari Club moved to dismiss the appeal
as moot and to vacate the district court judgment on May 4,
2007 and the federal appellants likewise moved on May 11,
2007. The Humane Society agrees that the March 12, 2007
delisting mooted the appeal. *See* Appellees' Br. 18.

## II.

"When a civil case becomes moot pending appellate
adjudication, '[t]he established practice . . . in the federal system
. . . is to reverse or vacate the judgment below and remand with
a direction to dismiss.'" *Arizonans for Official English v.
Arizona*, 520 U.S. 43, 71 (1997) (quoting *United States v.
Munsingwear, Inc.*, 340 U.S. 36, 39 (1950)) (alterations in
*Arizonans*); *see also United States v. Schaffer*, 240 F.3d 35, 38
(D.C. Cir. 2001) (en banc) (per curiam) ("When a case becomes
moot on appeal, whether it be during initial review or in
connection with consideration of a petition for rehearing or
rehearing *en banc*, this court generally vacates the District
Court's judgment, vacates any outstanding panel decisions, and
remands to the District Court with direction to dismiss.").
"Vacatur 'clears the path for future relitigation' by eliminating
a judgment the loser was stopped from opposing on direct
review." *Arizonans*, 520 U.S. at 71 (quoting *Munsingwear*, 340
U.S. at 40).

Both the federal appellants and Safari Club ask us to vacate
the district court's judgment. The Humane Society opposes
vacatur, asserting that "vacatur should be not granted when 'the

---

[10]The Humane Society is challenging the delisting in a separate
district court proceeding. *See Humane Soc'y of the United States v.
Kempthorne*, No. 07cv0677 (D.D.C. filed Apr. 16, 2007).

8

party seeking relief from the judgment below caused the mootness by voluntary action.'" Appellees' Br. 19 (quoting *U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship*, 513 U.S. 18, 24 (1994)). Vacatur does not apply, according to the Humane Society, because "[t]he mootness of this appeal is not happenstance" but was instead caused by the FWS's "timing of both the issuance of the Section 10(a)(1)(A) permits and the delisting decision." *Id.* The Humane Society acknowledges that the delisting of the gray wolf was proposed *before* the FWS issued Wisconsin DNR's section 10 permit but emphasizes that Wisconsin DNR *applied for* the permit over six months before the delisting proposal. Further, the FWS could reasonably anticipate that that permit would be challenged in court, the Humane Society maintains, and the delisting proposal was thus an attempt to head off litigation. Additionally, "[b]oth the Western Great Lakes Delisting Rule and the 2006 Permit were handled out of the same FWS Regional Office in Fort Snelling, Minnesota . . . [and] the principal author of the Western Great Lakes Delisting Rule also authored the Wisconsin Memo, which urged the issuance of a Section 10(a)(1)(A) permit to Wisconsin in 2005." *Id.* at 23.

The Humane Society's argument is based on its interpretation of the United States Supreme Court's decision in *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18, 24 (1994). In *Bancorp*, "[t]he contested question [was] whether courts should vacate where mootness results from a *settlement*." 513 U.S. at 23 (emphasis added). "[T]he determination is an equitable one," the Court explained, and "[t]he principal condition to which we have looked is whether the party seeking relief from the judgment below caused the mootness by voluntary action." *Id.* at 29, 24-25. It concluded that "[w]here mootness results from settlement . . . the losing party has voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari, thereby surrendering his claim to the equitable remedy of vacatur." *Id.* at 25. But it cautioned

9

that "[t]his is *not* to say that vacatur can *never* be granted when mootness is produced in that fashion." *Id.* at 29 (emphases added).

We have interpreted *Bancorp* narrowly. In *National Black Police Association v. District of Columbia,* 108 F.3d 346 (D.C. Cir. 1997), the Police Association brought a First Amendment challenge to the political campaign contribution limits imposed by the District. The district court struck down the limits and enjoined their implementation, *id.* at 348; while the District's appeal was pending, the District increased the contribution limits, thus mooting the appeal, *id.* at 347. Although we noted that *Bancorp's* "voluntary action" exception might apply to Governmental action we nonetheless vacated the district court judgment:

> The issue we face here is whether *Bancorp's* presumption against vacatur should apply where the party seeking relief from the judgment below is the government and the case has been mooted by passage of new legislation. *Clearly, the passage of new legislation represents voluntary action, and thus on its face the Bancorp presumption might seem to govern.* We believe, however, that application of the *Bancorp* presumption in this context is not required by the *Bancorp* opinion's rationale and would be inappropriate, at least if there is no evidence indicating that the legislation was enacted in order to overturn an unfavorable precedent. The rationale underlying the *Bancorp* presumption is that litigants should not be able to manipulate the judicial system by "roll[ing] the dice . . . in the district court" and then "wash[ing] away" any "unfavorable outcome" through use of settlement and vacatur. *Bancorp,* 513 U.S. at 27-29. The mere fact that a legislature has enacted legislation that moots an appeal, without more, provides no grounds for assuming that the legislature

10

> was motivated by such a manipulative purpose. The legislature may act out of reasons totally independent of the pending lawsuit, or because the lawsuit has convinced it that the existing law is flawed. In *American Library Association v. Barr*, 956 F.2d 1178 (D.C. Cir. 1992), we rejected the argument that vacatur was not appropriate where a case had become moot on appeal due to Congress' passage of new legislation, arguing that Congress' action "to repair what may have been a constitutionally defective statute . . . represents responsible lawmaking, not manipulation of the judicial process." *Id.* at 1187.

*Id.* at 351-52 (emphasis added and citation omitted) (alterations in *Nat'l Black Police Ass'n*).

We thus vacated the judgment although the District had mooted the appeal by enacting new legislation. Analogizing to *Black Police Association*, the FWS argues that the judgment here should be vacated because the Government is an appellant and it mooted the appeal by delisting the gray wolf. But the *Black Police Association* opinion in dicta seems to distinguish legislative from executive action:

> Separation of powers concerns provide further reason to exempt from *Bancorp's* presumption against vacatur the situation of a case which has become moot on appeal due to passage of legislation. As is true of the District, in most multi-branch governments defense of existing laws falls to the executive whereas initiation of legislation is the responsibility of the legislature. Although the executive has the option of refusing to sign legislation, so as to avoid mooting litigation, this option is a hollow one if the executive believes both that the new legislation would be beneficial and that the pending challenge has no merit. To a degree, therefore, the executive branch is in a position akin to a party who

11

finds its case mooted on appeal by "happenstance," rather than events within its control. *This argument suggests that the* Bancorp *presumption against vacatur might apply if the case has been rendered moot on appeal by enactment or repeal of a regulation,* even though the courts accord the executive branch the same presumption of legitimate motive as is given the legislative branch. We need not reach this question, however, and therefore express no views on the matter other than to note the limits of our holding here that the *Bancorp* presumption is usually inapplicable when legislative action moots a case and the government seeks vacatur.

*Id.* at 353 (emphasis added and citation omitted).

Relying on our language highlighted above, the Humane Society maintains that the *Black Police Association* holding supports *its* position because the FWS mooted the appeal by its delisting decision. Central to the Humane Society's argument, however, is the premise that the voluntary action exception applies to governmental action in the first place. And neither *Bancorp* nor *Black Police Association* decided that threshold issue. *See Bancorp,* 513 U.S. at 25 (holding that "[w]here mootness results from settlement, . . . the losing party has voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari, thereby surrendering his claim to the equitable remedy of vacatur"); *Black Police Ass'n,* 108 F.3d at 351 (observing that while "the passage of new legislation represents voluntary action, and thus on its face the *Bancorp* presumption *might seem* to govern," District was nonetheless entitled to vacatur) (emphasis added).

Moreover, in *American Family Life Assurance Co. of Columbus v. FCC,* 129 F.3d 625 (D.C. Cir. 1997) (*AFLAC*)—issued less than six months after *Black Police Association*—we suggested that the *Bancorp* exception may be

12

limited to appeals mooted by settlement. In *AFLAC*, the successor of a broadcast company that owned multiple television stations petitioned for review of an FCC order. While review was pending, the petitioner sold all of its interests in the television stations, thus mooting its petition. The FCC argued that its order should not be vacated because the petitioner mooted the case through its "unilateral, voluntary action." *Id.* at 630. We noted that "[t]he Commission's first point misinterprets [*Bancorp*] . . . [because] [t]he specific holding of *Bancorp*, concerning as it does *settlements*, has no application here." *Id.* at 630 (emphasis added). We then analyzed the "equities" of vacatur, rejecting the Commission's argument that it was "entirely 'speculative' that the Commission's Order will have any preclusive effects on petitioner in the future" and that "the continuing precedential force of the Order remain[ed] valuable to the public." *Id.* at 630-31.

While the *Black Police Association* dicta and *AFLAC's* interpretation of *Bancorp* may not be seamlessly consistent, neither squarely decided that *Bancorp's* voluntary action exception applies to "executive branch" action. We likewise need not resolve the issue because any doubt about the federal appellants' entitlement to vacatur is removed by intervenor Safari Club's entitlement thereto. As noted earlier, Safari Club intervened as of right and filed its own motion to dismiss the appeal as moot and to vacate the district court's judgment. "Vacatur is in order when mootness occurs through happenstance—circumstances not attributable to the parties . . . ." *Arizonans for Official English*, 520 U.S. at 71; *see also Bancorp*, 513 U.S. at 25 ("A party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment"); *N. Cal. Power Agency v. Nuclear Regulatory Comm'n*, 393 F.3d 223, 225 (D.C. Cir. 2004) ("[I]f the party who lost below did not cause the case to become moot, that is, if happenstance or the actions of the prevailing party ended the

13

controversy, vacatur remains the standard form of relief.")
(citations omitted).    Plainly, Safari Club did not moot the
appeal—the delisting decision was made by the FWS.
Moreover, "vacatur is an equitable remedy," *Columbian Rope
Co. v. West*, 142 F.3d 1313, 1318 n.5 (D.C. Cir. 1998) (citing
*Bancorp*, 513 U.S. at 25), and here the equities favor vacatur.
This is "not a case in which a litigant is attempting to manipulate
the courts to obtain the relief it was not able to win in the
judicial system." *Wyoming v. U.S. Dep't of Agric.*, 414 F.3d
1207, 1213 (10th Cir. 2005) (vacating district court judgment
mooted by promulgation of U.S. Forest Service regulation
because vacatur was sought by non-governmental intervenors).
And "because the party seeking appellate relief is not the party
responsible for mooting the case, the orderly operation of the
appellate system is not being frustrated." *Id.*[11]    Accordingly, the
judgment of the district court is vacated.

*So ordered.*

---

[11]The Humane Society contends that "permitting Safari Club,
which intervened as a defendant *on behalf of the government*, to seek
vacatur where the government could not, would open a serious
loophole in the rule of *U.S. Bancorp* for any case involving
intervenors." Appellees' Br. 25-26 (emphasis in original).    Safari
Club, however, intervened as of right because its interest was not
adequately represented. *See* Fed. R. Civ. P. 24(a)(2).